**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DONALD VAUGHAN,

    Plaintiff,

    v.                                                                  Civil Action No.:  PX-22-3134

BURNICE MACE,
MEDICAL DEPT.,
CORIZON HEALTH,[1]
YESCARE HEALTH,

    Defendants.

**MEMORANDUM OPINION**

Pending in this civil rights action brought pursuant to 42 U.S.C. § 1983 is Defendants'

Motion to Dismiss the Complaint or alternatively for Summary Judgment in their favor.  ECF No.

19.   Plaintiff Donald Vaughan opposes the motion. ECF No. 21. Vaughan also moves for

appointment of counsel (ECF Nos. 14 and 22) and to amend the Complaint (ECF No. 24).   The

Court has reviewed the pleadings and finds no hearing necessary.  *See* Local Rule 105.6 (D. Md.

2023).  For the reasons discussed below, Defendants' motion  is granted.  Vaughn's motions are

denied.

The Court turns first to Defendants' motion.

    **I.**    **Motion to Dismiss or for Summary Judgment**

        **A.**    **Background**

This case arises from the medical treatment Vaughn received while a prisoner at Western

Correctional Institution ("WCI").   Vaughn alleges that certified nurse practitioner, Burnice Mace,

provided inadequate medical care after he had received surgery to remove a benign tumor on his

---

[1]    This matter is stayed as to Defendant Corizon Health due to an ongoing bankruptcy proceeding.

face.  He further claims that Mace retaliated against him by cutting off his prescription for Tegretol and otherwise denying him care.  As to Mace, the Court will treat the motion as one for summary judgment. Thus, the record is summarized most favorably to Vaughan as the nonmovant.

Around January 7, 2019, Vaughn first saw nurse practitioner, Mary Miller, for a tumor on his face. Vaughn had previously refused to allow that mass to be biopsied because he did not want to be placed in the infirmary.  ECF No. 19-2 at 3, ¶¶ 7, 8.  But on this visit, Vaughan requested to have the biopsy rescheduled.  *Id*., *see also* ECF No. 19-22 at 10-12.  The biopsy took place about six months later and confirmed the tumor to be benign.  ECF No. 19-2 at 4, ¶¶ 9-10.  *See also* ECF No. 19-9 at 23.

On January 2, 2020, Vaughn saw Dr. Joginder Mehta, who recommended that Vaughn be evaluated for possible surgical removal of the mass.  ECF No. 19-2 at 4, ¶ 11. *Id*., *see also* ECF No. 19-20 at 24-25.  By December 28, 2020, Vaughn became frustrated that he had not already received  the surgery.  The mass had also grown.  ECF No. 19-2 at 6, ¶ 15.  Vaughan requested that he see a specialist.  *Id*., *see also* ECF No. 19-18 at 28-31.

On March 11, 2021, Dr. Christine Gourin at the Johns Hopkins University Hospital examined Vaughn. ECF No. 19-2 at 7, ¶ 17.  Dr. Gourin recommended an MRI.  *Id*., *see also* ECF No. 19-9 at 7-10.  The MRI confirmed that removal of the tumor was warranted.  ECF No. 19-2 at ¶ 18; *see also* ECF No. 19-9 at 7-10.

Vaughn received the surgery on July 20, 2021, at the Johns Hopkins Hospital.  ECF No. 19-2 at 9, ¶ 23.  Vaughan returned to WCI the next day with discharge instructions that included emptying the surgical site drain and recording the output "three times daily, and more often as necessary."  *Id*.  The instructions also directed removal of the drain once the output dipped below a certain amount in a 24-hour period.  *Id*.

2

Upon his return to the prison, Vaughn was placed in the infirmary to monitor the drain output.  *See* ECF No. 19-3 at 28-33; ECF No. 19-6 at 17-36; ECF No. 19-7 at 1-4.  On July 27, 2023, Vaughan complained that the drain  "was bleeding and draining out all over him," and that he would rip the drain out if he were not returned to general population.  ECF No. 1 at 3; ECF No. 19-2 at 9, ¶ 24.  Vaughn alleges that Defendant Mace refused to treat him on that day.  ECF No. 1 at 2-3.  But Mace attests that based on her review of contemporaneous time records, she did not work on July 27.  ECF No. 19-2 at 10, ¶ 27.

On August 6, 2021, a physician examined Vaughn.  The doctor observed that other than some forehead weakness, Vaughn was healing well.  ECF No. 19-2 at 10, ¶ 28; ECF No. 19-6 at 9-10.

Three months later, on November 12, 2021, another physician examined Vaughan for complaints of facial pain.  At the time, Vaughan would have headaches daily, with the pain making him unable to "stand, sleep and eat on [the] right side" of his mouth.  ECF No. 15 at 9, ¶ 33.  Sometimes the pain alters his hearing and sight.  *Id*. at 35.  The doctor prescribed Cymbalta to Vaughan for pain.  ECF No. 19-2 at 11, ¶ 30, *see also* ECF No. 19-14 at 35-36.

Vaughan next saw the doctor on January 22, 2022, with similar complaints regarding pain in his face; he also described having back pain.  ECF No. 19-2 at 11, ¶ 30.  Vaughn asked for medications "stronger" than the Cymbalta prescribed in November.  *Id*.  *See also* ECF No. 19-14 at 24-25.  He was continued on the same prescription.  ECF No. 19-2 at 11, ¶ 31, *see also* ECF No. 19-14 at 17-18, MR 412-23.

On October 4, 2022, Vaughan was seen for complaints of back and face pain.  ECF No. 19-2 at 11-12, ¶ 33.  A physician's assistant prescribed him Mobic.  Within a month, Vaughan had

stopped taking it because he said it did not work.  *Id*.  The same physician's assistant next prescribed Tegretol[4] as an alternative.  *Id*., *see also* ECF No. 19-13 at 16-18.

On November 24, 2022, Vaughan was scheduled to see nurse Mace for his complaint of chronic pain.  ECF No. 19-2 at 12, ¶ 34.  When Mace put questions to Vaughan designed to gather his medical history, Vaughn responded, "'You act like you don't already know.'"  *Id*.  When she asked him where the pain was located, he asked if she was "playing games" with him and told her to look it up in the computer.  *Id*.  Vaughn next would not discuss his back pain, telling Mace that he would not play "this game" and that he would sue her.  *Id*., *see also* ECF No. 19-13 at 2-4. During this visit, Mace did not observe any signs of physical distress.  So, because Vaughn would not answer questions, Mace ended the visit.  But she did order blood work to measure his Tegretol levels.  ECF No. 19-2 at 12, ¶ 34.

At the next visit on February 26, 2023, Mace shared with Vaughan that his Tegretol levels were subtherapeutic, indicating that he had not been taking the medication as prescribed.  ECF No. 19-2 at 13, ¶ 36 *see also* ECF No. 19-12 at 26-29.  As a result, Mace discontinued the prescription. Mace did not treat Vaughan again after that visit.  *Id*. at ¶ 37.

### B.    Standard of Review

Defendants move to dismiss Vaughan's claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor under Rule 56. Such motions implicate the Court's discretion under Rule 12(d).  *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  To survive a motion to

---

[4]    Tegretol is an anticonvulsant that is used to treat seizures and nerve pain such as trigeminal neuralgia.  *See* https://www.drugs.com>tegretol (last visited Feb. 14, 2024).

dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Vaughan's response to the dispositive motion demonstrates that he knows Defendants seek summary judgment. ECF No. 21. Furthermore, Vaughan does not object to converting the motion to one for summary judgment and submits evidence outside the four corners of the Complaint. The Court will thus construe the motion as seeking summary judgment. *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005).

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639,

645 (4th Cir. 2002).  Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Id*. (quoting Fed. R. Civ. P. 56(e)).  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 249-50.

### C.      Analysis

The Court first turns to the putative institutions that Vaughan attempts to sue.  The Complaint names as Defendants the "Prison Medical Provider," and "YesCare Health."  ECF Nos. 1 & 15.  He alleges no specific wrongdoing as to either of the entities.

To the extent Vaughan attempts to sue the prison itself, it is not an entity capable of being sued for a constitutional violation brought pursuant to 42 U.S.C. § 1983.  Section 1983 provides that "[e]very person who, under color of [law] subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983 (emphasis added). Neither the State, nor its agencies, can be sued under § 1983 because they are not "persons" under § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989).  Thus, any such "prison medical institution," cannot be sued for the alleged constitutional violations.

As for YesCare, as the entity providing medical treatment to WCI inmates, nothing in the Complaint makes plausible that it retains institutional liability arising from an unconstitutional

custom, habit, or practice.  A provider like YesCare may be held liable if the corporation performs functions otherwise reserved for a state actor and carries out those functions pursuant to a "custom, policy, or practice" that "violate[s] a plaintiff's constitutional rights." *Owens v. Balt. City State's Atty's Offc.*, 767 F.3d 379, 402 (4th Cir. 2014); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  The Complaint avers no facts to make plausible a *Monell* claim against YesCare.  Accordingly, all Defendants but Mace are dismissed from the action.

Turning next to defendant Mace, Vaughan alleges that Mace denied Vaughan constitutionally adequate medical care, in violation of the Eighth Amendment to the United States Constitution and its prohibition on cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  To survive summary judgment, some evidence must reflect that the defendant's acts or omissions amounted to deliberate indifference as to plaintiff's serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it."  *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff, aware of prisoner's need for medical attention, failed to either provide such care or ensure the needed care was available.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).  "A medical condition is shown as objectively serious when it 'would result in further significant injury or unnecessary and wanton infliction of pain if not treated."  *Formica v. Aylor*, 739 Fed Appx. 745 (4th Cir. 2018), *citing Gayton v. McKoy,*593 F.3d 610, 620 (7th Cir. 2010).

Regarding proof of subjective recklessness, "[t]rue subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995)(quoting *Farmer*, 511 U.S. at 844).

If the plaintiff adduces some evidence as to defendant's deliberate indifference, the prison official may nonetheless still avoid liability "if [she] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)).

Defendants concede that Vaughan's facial mass constitutes an objectively serious medical need. ECF No. 19-2 at ¶¶ 12, 17, 22-23. Mace's role in Vaughan's care, however, was quite limited. She treated him briefly after his surgery and again several months later for pain. When viewing the record most favorably to Vaughan, no rational trier of fact could conclude that Mace was deliberately indifferent to Vaughan's serious medical needs.

For one, Mace timely responded to Vaughan's complaints of pain. Upon learning that Mobic had not alleviated Vaughan's pain, she prescribed Tegretol. However, once the blood test results showed Vaughn was not taking the medicine as directed, Mace understandably discontinued the prescription. From this, no rational factfinder could conclude that Mace had been deliberately indifferent to Vaughan's serious medical needs.

Similarly with regard to Mace's attempts to treat Vaughan, while Vaughan asserts baldly that Mace refused treatment, the record demonstrates otherwise.  Mace tried to treat Vaughan.  At two appointments, Mace asked medically relevant questions designed to assess the status of his face and back pain.  Vaughan responded by telling her to "get the fuck up out of here," and otherwise appeared physically stable.  Vaughan also refused to answer Mace's basic medical questions.  When it became apparent that Vaughan would not cooperate, and he was not otherwise in medical distress, Mace terminated the appointments.  *Cf. Hayes v. Precythe, et al.*, No. 21-04228-CV-C-SRB-P, 2022 WL 17588485 at *2, 4 (W.D. Mo. Oct. 18, 2022), *affirmed* No. 22-3554 (8th Cir. Dec. 6, 2023); *Brown v. Avant, et al.*, No. 2:09-CV-00133 SWW/HDY, 2010 WL 3941289 at *3 (E.D. Ark. Sept. 16, 2010) (no deliberate indifference where examination was terminated due to prisoner plaintiff's combative behavior).  On this record, no reasonable juror could conclude that Mace's termination of the visits amounts to an unconstitutional denial of medical care.

Last, Vaughan's retaliation claim against Mace also fails.  To survive summary judgment, Vaughan must marshal some evidence that any alleged "retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right."  *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  *See also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005).  Vaughan avers that Mace retaliated against him by denying medical care and withdrawing his Tegretol prescription because he had filed grievances against her.  ECF No. 15 at 8-9.  But the record, viewed most favorably to Vaughan, does not support any causal connection between Vaughan's protected activity and Mace's medical decisions.  During medical visits with Vaughan, Mace attempted to provide care, only for such care to end because Vaughan did not want to answer medically relevant questions.  Further, the

record reflects that Mace ended the Tegretol prescription because Vaughan had not been taking it as directed.  By contrast, nothing supports that Mace's medical decisions were taken in response to grievances filed.  Thus, summary judgment in Mace's favor must be granted.

## II.    Vaughn's Motions

Vaughan moves to amend the Complaint to bring an "excessive force" claim, but provides no details in support.  Nor does he name any specific defendant.  ECF Nos. 24.  The attachments to the motion, however, do relate to the claims against Mace.  Accordingly, the Court has considered in connection with Defendants' summary judgment motion.  *E.g.,* ECF Nos. 24-2, 24-3, 24-4 & 24-6.

Although the Court "should freely give leave" to amend "when justice so requires,"  Fed. R. Civ. P. 15(a)(2), where the proposed claim fails as a matter of law, the Court may deny amendment as futile.  *See Katyle v. Penn Nat. Gaming, Inc.*  637 F.3d 462, 471 (4th Cir. 2011), citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008). "[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules."  Because the proposed amended claim is utterly devoid of any facts in support, the claim fails as a matter of law.  Thus, amendment would be futile, and the motion must be denied

Vaughn also asks the Court to appoint counsel to represent him.  ECF Nos. 14 and 22.  The Court, in its discretion, may appoint counsel where the plaintiff presents exceptional circumstances warranting appointment*. See* 28 U.S.C. § 1915(e)(1); *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982).  Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it."  *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v.*

*U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). Vaughan is capable of presenting the claims for consideration. Moreover, the Court has granted full relief to all Defendants, save for Corizon Health. Thus, no exceptional circumstances exist to justify appointment of counsel. The motion is denied.

### III.   Conclusion

The Court dismisses the action as to Defendants Yes Care Health and Medical Care Providers. The Court grants summary judgment in favor of Defendant Mace. And the claim against Corizon Health is stayed. Vaughan's motions are denied. A separate Order follows.

3/19/24                                                     /S/
_____              _____
Date                                                        Paula Xinis
                                                              United States District Judge

11